## Case No. 11,303.

### The POSTBOY.

[10 N. Y. Leg. Obs. 65.]

District Court, S. D. New York. 1851.[1]

COLLISION—STEAM AND SAIL—CHANGE OF COURSE—PROOF AT VARIANCE WITH LIBEL.

1. Where a steamboat with a vessel in tow and a vessel under sail, with the wind free, were approaching from opposite directions, and each on a course which, if pursued, would carry them clear of each other, the steamboat was not liable for damages to the latter by a collision caused by an improper change in her course across the bow of the steamboat.

2. The steamboat exonerated herself from blame by using the means within her power to avoid a collision, when ascertaining that the sailing-vessel was crossing her course.

3. Proofs on the part of the libellant will not be allowed to contradict the allegation of the libel.

4. Facts tending to fix the relative position of vessels by those on board allowed more weight than the opinion of lookers-on, although the latter outnumbered the former.

In admiralty.

Barnard & Parsons, for libellant.

W. J. Haskett and W. Q. Morton, for the Postboy.

BETTS, District Judge. The sloop Joseph C. Griggs and steamboat Postboy, at about midnight on the 14th of October last, came in collision a few rods off pier No. 2 or 3, on the North river side, in this harbor. They were running in opposite directions. The sloop, on a flood-tide, with a very light wind from the S. W., sufficient to work her, was seeking a berth at pier No. 4, and the steamer, with a barque in tow, was running for the East river, and struck the shrouds of the sloop on the larboard bow, near the quarter-deck, doing her considerable damage, and also causing injury by leakage to a part of her cargo of wheat. The two vessels met twelve or twenty rods west of the piers. The libel charges that the sloop, from Castle Garden up, had held a straight course parallel with the docks inside the steamer, which was coming down further west from the docks, and was hailed to stop or keep off, instead of which she bore in towards the pier.

---

1 [Affirmed by circuit court; case unreported.]

and ran upon the larboard side of the sloop. The answer denies this statement, and avers that the steamer kept a course directly down the river parallel with the docks, the sloop, when first seen, being one quarter of a mile off, and far enough to the west of the steamer to leave ample room for the latter to pass safely between her and the docks; that the sloop was apparently going up the river, and, had she continued her course, would have run entirely clear of the steamer, but that, when within 100 or 150 feet, she suddenly changed her course towards the docks and across the bow of the steamer, and though every effort was then made, the sloop was too near to enable the steamer to avoid the collision. So far as the opinions and judgments of witnesses observing the transaction may be entitled to guide the decision of the court, there is a preponderance of numbers who throw the blame wholly on the steamboat. In so far, however, as facts are given, fixing the relative positions of the vessels and their movements, they conduce most strongly to the support of the answer and the contradiction of the libel.

The case made by the libel is that the sloop was running a direct course north, without deviation, in front of the docks, inside of the steamer, and that the latter sheerer and pressed in upon her from the west, attempting to go between her and the docks, and in that manner came upon her larboard bow. Witnesses Wesley and McGinnis, who saw the collision from their small boat, place the two vessels approaching substantially on the same line, as do also the Littlefields, in effect, for they considered the sloop to be running directly north; and Dodge, the man on board the sloop, in his direct examination, concurs in substance in that view, for he says, when near pier No. 1, he first saw the steamer, and that the sloop was then heading northward and eastward, and that the steamer was coming right for them, the sloop being eight or ten rods from the pier. On his cross-examination he says, when he first saw the steamer she was heading along shore, then eight or ten rods off, and straight for the sloop, which was heading towards the docks. The stern of the sloop was to the westward of the steamer. When struck, she was steering so that her bowsprit and mast were east of the barque in tow, and her stern west, when the latter came upon her. The three Littlefields did not observe the steamer until at the moment of the collision. Her course was up and down the river, but they then noticed her stern was towards the dock and her head bearing out into the river; and they, and all the witnesses except Dodge, estimate the distance she was running off the docks to have been about twenty rods. The Littlefields state the collision to have been on the starboard bow of the sloop. This is against the representation of the libel and the evidence of the witnesses Dodge,

Clarkson, Sleigh and Baldwin. It must accordingly be taken as a fact in the cause that the sloop received her injury on her larboard side.

Proceeding upon that fact, it must be established, in order to fix the fault on the steamer, that she bore in shore upon the sloop, or did not use the means at command to avoid her, when it was ascertained she was coming round into her berth. The entire evidence is that the steamer was not further off from the docks than the sloop when the two were first seen or approaching, and there is no evidence contradicting the testimony of the captain of the barque and of the captain and pilot of the steamer that the sloop was then on a course so far outside the steamer as to leave a safe passage to the latter between her and the docks. The evidence of these witnesses that the sloop changed her course suddenly across the bows of the steamer is confirmed by that of the witness Dodge giving her position when she received the blow. It is proved that the engine of the steamer was stopped the moment it was observed the sloop stood across her, and reversed, and her helm "put a-port" to change her course outside the sloop; but that the two vessels were in such near proximity that those exertions were fruitless. I am bound to hold upon the facts proved that the libel is not supported, and no want of precaution or blamable conduct is established against the steamer, and accordingly the decree must be for the dismissal of the libel against her, with costs.

NOTE. The above case having been appealed to the circuit court of the United States, the decree of the district court was affirmed, with costs, by the Hon. Samuel Nelson, Circuit Judge, at the October term, 1851. [Case unreported.]